The next matter is the Zamora v. JP Morgan Chase. Yes, good morning. If it may please the court, I'm David Stander for the Appellant Plaintiff. There is one issue in this case, in this court on appeal, and that is whether the trial court erred in not finding an alleged Enterprise member JP Morgan Chase functioned with a common purpose with other members of the the defaulting defendants, Baez, Sanchez, and the FID entities. The trial court made this determination even though it recognized that these Forex futures accounts were opened in year 2003 with the, quote, with the complicity, unquote, of a bank employee who has been identified as a bank senior vice president, Yolanda Santiago Husband. There are many specifics in the AC and corroborated in the record which show that the bank acted in complicity not only with the opening of the accounts, these were open without Social Security or TIN numbers, but also show the complicity in the maintenance of the accounts throughout the entire time period. Many of these specifics were not considered at all by the trial court. All they show, they show complicity and some of these specifics which the court ignored in its opinion. First, just to repeat, it did recognize that the accounts were opened with the complicity of a bank employee and, as argued in the briefs, the appellees have noted that if the bank was acting in complicity that that would be the AC to survive a motion to dismiss. Oh, surely, Mr. Stander, you're not saying that because the District Court used the word complicity, it made a finding that is directly contrary to what the court actually said, which was there was not sufficient information here to show aiding and abetting. Right. Didn't the District Court just mean that they opened the accounts at the approval and with the activity of the bank officer? Yeah, it always takes a bank officer to open the account. They can't open the account on their own without somebody at the bank approving it. Right, right, but our point is is that there are many specifics and factors which were not considered by the trial court, which do show the bank was complicit with the defaulting defendants in connection with the maintenance of the accounts. And most prominently is the fact there was a CFTC investigation. What did the bank do that you would say violated RICO? Well, first we think that they were part of the enterprise. They were functioning as a continuing unit. What did they do? I mean, I think, yeah, give us a list of the things that the bank did that helped this fraud go forward. Well, there's not too many. There's a few things the bank did. Give us the top three. Well, number one is they affirmatively overrid their money laundering protections. But our point is not that what affirmatively what the bank did. We're not trying to show at this stage of the proceedings that there was specific intent. I think we can show that that's really a jury question. Excuse me, don't you need to show, to allege facts that give rise to a reasonable inference, a plausible inference, that the bank, A, knew what the scheme was, and B, provided substantial assistance to the operation of the scheme? Yes, we believe the amended complaint meets that. It does show that the bank knew what was going on, and it did provide substantial assistance. And here, and here's why. How they knew is because in year 2005, the bank was issued a subpoena by the CFTC, who was investigating the non-registered status of these Forex accounts. The CFTC, and this is corroborating the record, this is A-908 of the record. The CFTC concluded that these accounts were opened and maintained illegally, that they were in violation of law, in violation of the Commodities and Exchange Act. Despite that conclusion, the bank did nothing to close the accounts. The accounts remained open for another five years, and these were opened in violation of law. Also, to prove that they knew of the incident. You skipped one step. The bank was told of the results of the CFTC investigation? Well, we don't know if they were told. So, anytime a bank gets a subpoena, it either has to terminate the account, or it is subject to suit on the theory that, or it should have followed up and figured out, found out what the CFTC eventually did with the investigation? Well, we think that here, what we're trying to show is that there was a mutual dependency between the FID entities and the bank. The FID entities needed a bank with escrow accounts, which would look the other way, and so that they could conduct their illegal activity. That's all that's sufficient for showing common purpose. We don't have to, at this stage, show that the bank had the specific intent. That's not what we're arguing. We're arguing is that when the bank opened these accounts... Did the bank know that this was a Ponzi scheme that they were then participating in, right? Isn't that the substance of what makes them aiders and abettors, or makes them part of an enterprise? Well, as far as aiders and abettors, I mean, that's a question of fact for a jury. For this purpose, we're focusing merely on... No, I'm sorry. We're talking across purposes. Of course, ultimately, it's going to be a question for the jury, if, at summary judgment, there's sufficient evidence to prove that they had that kind of knowledge. And if, at the 12B6 stage, you've made allegations that give rise to a plausible inference that they had that kind of knowledge. And that's what I'm trying to get at. What is the evidence that they had that kind of knowledge and provided some kind of actual assistance? Well, the reasonable inference can be drawn by all of these circumstances, many of which were not looked at by the court. And I think Judge Parker and I have asked you several times to just list them. Tell me what are those circumstances. And so far, they got a subpoena. One, the accounts were opened in a very improper manner without Social Security or taxpayer identification numbers. Number two, the bank received the subpoena and did no further investigation. On the taxpayer identification number, I think your adversary says that that was consistent with federal banking regulations. Is that incorrect? Pardon me, what is consistent? You said the bank accounts were open without a taxpayer identification number. I think I recall that your adversary took issue with that being improper under banking regulations. Am I wrong about that? I believe the appellee had argued that it was not in violation of law for the accounts to be open without Social Security numbers. But in crediting that statement, it still was improper for these accounts to be open that way. Second, the money is at the bank. Improper because it violated an internal bank process that they were supposed to do? Is that what improper means here? I think that is not the typical way that an account would be opened by a financial institution. But RICO is not a remedy for sloppy record keeping. Well, we believe for this purpose, we're arguing about the common purpose, whether or not they're functioning together as a continuing unit. We believe that the judge erred by not looking at specifics and some of these specifics, primarily the CFTC investigation. In the CFTC findings, they talk about the fact that Baez and Sanchez didn't produce documents. The bank should have known this, having received the subpoena. Baez and Sanchez refused to answer CFTC questions, refused to cooperate. The bank failed to do its own investigation. And also, the bank failed to file a suspicious activity report, even after receiving a subpoena. So I do understand, Judge Lynch, how there's nothing in the record to show affirmatively that the bank knew of the CFTC findings. But the bank certainly should have known that these accounts were opened under unusual circumstances and they were maintained illegally in violation of the Commodities and Exchange Act. But yet, they did nothing. And the Ponzi scheme continues on. When you say maintained illegally, on whose part is the illegality? Well, they maintained... Something illegal. The schemers are doing something illegal because they didn't register properly. They were not eligible to register because they didn't have the proper licenses.  I think it's not an expert on banking law, but I think it certainly raises red flags that the bank, that accounts have been set up for futures trading, which are not registered. And a review of the website would see that these are not registered accounts. They're identified as pending or withdrawn. We believe that if this case is remanded and a further investigation is done, that we'll be able to show that the bank must have known of the CFTC recommendations and therefore was acting in a mutually dependent way with the FID entities. Thank you. We'll hear from your adversary. Good morning, and may it please the court. Jamie Dicus for Appalese, JPMorgan Chase Bank and JPMorgan Chase and Company. To pursue their claims, as the court has already recognized, plaintiffs have to plausibly allege that Chase was part and parcel of the unlawful scheme here. They haven't come close to doing that. As we just heard from my adversary, they rely principally on the fact that accounts were opened for other alleged participants in the scheme, and they rely beyond that on conclusory statements that Chase should have known or must have known about the scheme. But those type of allegations are insufficient under the well-settled law of this circuit. I'd like to quickly rehearse four other reasons why we think affirmances warranted here, but then I want to respond to a couple of things that my adversary said. First, as I've already mentioned, the new or should have known allegations, the must have known allegations are categorically insufficient to plead actual knowledge, and that dooms all of the aiding and abetting claims. Likewise, the failure to plead anything beyond the provision of ordinary banking services is in substantial assistance and dooms those claims for an additional reason. Second, plaintiffs haven't pled their RICO claims. And I gather, I'm not sure how to treat my adversary's statement in the argument today that that's all we're talking about today. You know, maybe that means that the other claims are off the table, but the RICO claims are not a basis for this claim to go forward. Principally, because as Judge Polley correctly recognized, they haven't pled a common purpose. There's no plausible allegation. There are no facts in the complaint that plausibly suggest that Chase had a reason to permit these other participants in the alleged scheme to use Chase accounts to commit fraud. Also, relatedly, the other common law claims fail for a variety of reasons, including because plaintiffs haven't alleged that they themselves have any relationship with Chase. Finally, a number of the claims, including the RICO claims, are time barred because this is a case in which, by their own allegations, plaintiffs knew that they had been injured long before. They knew that they were injured in May 2009, according to the amended complaint, when the JP Morgan accounts were closed. They then had four years to bring their RICO claims, and they didn't. Five years later, that dooms the RICO claim for an additional reason. It also requires dismissal of two of the common law claims. Just to quickly respond to a couple of things that were said by my adversary, I think the court has already recognized the flaws in the amended complaint, that it is heavily reliant on the legal conclusions that my adversary offered when asked, what is the participated or even knew about the alleged scheme? The first answer, I think, was we've pled actual knowledge, and then I think we also heard we've pled that they should have known. They haven't pled actual knowledge with that conclusory statement, and should have known has been recognized over and over as not a basis to find actual knowledge. When counsel was pressed, we heard about a couple of factual allegations that are contained in the complaint, but I want to caution the panel that not all of the allegations that counsel mentioned are actually in the amended complaint. For example, if you look at the amended complaint where the CFTC investigation is discussed, it's not as described. There's no description of Chase receiving a subpoena and not cooperating with it. And it also says that the CFTC investigation led to no conclusions, quite different from what counsel said today. In addition, I think Judge Lynch's point is a good one. The receipt of a subpoena, even if plaintiffs had alleged that, which they have not, would be far from sufficient for them to carry their burden to plead actual knowledge. Similarly, the alleged improper opening of the account without a TIN, which actually, as we pointed out, is authorized under federal banking regulations, even if that were improper, which it isn't, it would be at most a red flag. And, you know, we're not conceding that it was a red flag, but even if it were, that would not be enough to plead actual knowledge. That is the conclusion that this court and the courts of this circuit have reached over and over in cases like Berman and Rosner. Similarly, counsel mentioned the fact that two of the FIT defendants didn't have licenses to engage in the business that they said they were engaging in. Again, as I think Judge Lynch, you recognized, that is not a basis to conclude that Chase had actual knowledge of anything, including the absence of a license. But, you know, much less that the other defendants here were engaged in a fraudulent scheme or a RICO enterprise. I'll stop there and see if the panel has any questions. Thank you. We'll hear rebuttal. Thank you. I believe, yes, we want to answer a few of those points. Number one, when counsel indicated there's no allegation of the subpoena, that's incorrect. It's alleged in the complaint, page A124, paragraph 82. It's also in the record at A908, where a CFTC enforcement memorandum says that the plaintiff sets forth that a subpoena was sent to the bank. The major point that's being made is that counsel's indicating that there has to be actual knowledge, proof of actual knowledge here. And what we're arguing is that all these facts, from all these facts and everything that the bank didn't do, from all the facts of overlooking the suspicious opening of the accounts, from having the same account manager for that entire time, for maintaining accounts, which were easily, from the web, could be shown to be illegally maintained by not taking, filing a SAR, by not conducting their own investigation. From all of that, we can infer that the bank, at this stage of the proceeding, had knowledge of what the Ponzi schemers were doing. And I think that if you had to come to the issue of whether or not it's liable as a RICO defendant, you'd have to show that the bank had the specific intent to defraud. And I believe that showing that they're affecting these transactions for the seven years is sufficient to show that as well. Thank you both. And we will take the matter under advisement. Thank you.